IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

**FILED**

MICHAEL ANTHONY TODD,
            Plaintiff,

VS.

S. KERNAN, K. ALLISON, D. BAUGHMAN, G. JONES,

J. CLOUGH, R. HAYNIE, L. MACIAS, M. HUBER,

DOES 1 and 2, INDIVIDUALLY AND IN THEIR

OFFICIAL CAPACITIES,
            Defendants.

CASE NO.:

AUG 0 3 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
        DEPUTY CLERK

COMPLAINT

42 U.S.C. §1983

Civil Rights Act

2:17 - CV - 1611    AC PC

JURY TRIAL DEMANDED

## PRELIMINARY STATEMENT

This is a civil action, authorized by 42 U.S.C. §1983, to redress the deprivation, under color of state law, of rights secured by the Constitution and laws of the United States. It is brought before the Court by Michael Anthony Todd, a state prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR), and confined at California State Prison – Sacramento. He alleges that Defendants have acted with deliberate indifference and reckless disregard and have caused him to suffer physical, mental, emotional, and financial injury, in violation of the prohibition against cruel and unusual punishment contained in the Eighth Amendment to the United States Constitution. Plaintiff seeks punitive and compensatory damages. He also seeks declaratory and injunctive relief.

## I.  JURISDICTION

1. The Court has jurisdiction over the Plaintiff's claims under 28 U.S.C. §1331 and §1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §2201 and §2202.

Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. §2283 and §2284, as well as Rule 65 of the Federal Rules of Civil Procedure (FRCP).

## II.   VENUE

2.  The Eastern District of California is an appropriate venue under 28 U.S.C. §1391(b)(2) because it is where the events giving rise to this claim occurred.

## III.  PLAINTIFF

3.  Plaintiff, Michael Anthony Todd, is, and was at all times mentioned herein, a prisoner of the state of California in the custody of CDCR. Plaintiff is, and was at all times during the events related herein, confined at California State Prison—Sacramento (SAC).

## IV.  DEFENDANTS

4.  Defendant S. Kernan is the Secretary of CDCR.

5.  Defendant K. Allison is the Director of the Division of Adult Operations for CDCR.

6.  Defendant D. Baughman is the warden of SAC.

7.  Defendant G. Jones is an Associate Warden at SAC in charge of the custody operations of its education department.

8.  Defendant J. Clough is the Captain of C-Facility at SAC.

9. Defendant R. Haynie is the Program Lieutenant of C-Facility at SAC.

10. Defendant John Doe 1 is the Work Center Sergeant of C-Facility at SAC.

11. Defendant John Doe 2 is the Education Officer for the C-Facility Work Center at SAC.

12. Defendant L. Macias is the instructor of the Office Services and Related Technologies (OSRT) vocational class in the C-Facility Work Center at SAC.

13. Defendant M. Huber is the teacher of the Adult Basic Education I class (ABE-I) class in the C-Facility Work Center at SAC.

14. Each Defendant is sued individually and in his or her official capacity. At all times relevant to this Complaint, each Defendant acted under the color of state law.

## V. FACTS

### i. Background: Creation of a Dangerous Environment

15. CDCR has long recognized the threat that prison gangs pose to the safety and security of its institutions. In fact, members of prison gangs are considered such a threat that the administration spent decades identifying them, and anyone even remotely associated with them, and segregating them from the general population by housing them in the Security

1   Housing Units (SHU) indefinitely.

2

3   16. Under the leadership of Defendants Kernan and Allison, CDCR has

4   completely reversed its policy and is no longer attempting to limit the

5   threat posed by prison gang members to the safety and security of its

6   institutions, staff, or inmates. In fact, CDCR's new policy is designed

7   in such a way as to give the prison gangs as much influence over other

8   inmates and staff as possible.

9

10   17. Rather than isolating prison gang members and their associates to

11   individual prisons or yards where they would not be allowed to influence or

12   victimize other inmates, CDCR has done its best to spread these recognized

13   threats to safety and security to as many prison yards as possible, thereby

14   jeopardizing the well-being and rehabilitation of the inmates on those

15   yards and increasing the influence of the prison gangs. This policy has

16   been instituted and enforced at the directives of Defendants Kernan

17   and Allison.

18

19   18. Since the release of these prison gang members and their associates

20   from the SHU, the number of violent attacks on staff and inmates has

21   increased, especially incidents of battery with a weapon and murder. These

22   attacks, by and large, are committed by inmates associated with, or under the

23   influence of prison gang members, rather than by the prison gang members

24   themselves. The influence of these prison gang members has been greatly

25   expanded by the policies of Defendants Kernan and Allison.

26

27   19. CDCR has long recognized certain yards as "Programming" yards,

28   i.e., yards where the inmates do not follow the prison gangs and have chosen

COMPLAINT   PAGE 4 OF 21

to focus on personal rehabilitation, staying out of trouble, and working towards their eventual release from prison. Although CDCR periodically attempts to stop these yards from being programming yards by housing non-programming inmates on them, who then go about removing the programming yard inmates from the yard by attacking them, and sometimes succeed in turning it into a non-programming yard, CDCR did continue to recognize certain yards as programming yards. However, under the leadership of Defendants Kernan and Allison, CDCR has begun placing prison gang members and their associates on some of these programming yards and, after violence is committed against the programming inmates, turning them into non-programming yards.

20. C-Facility at SAC has long been recognized as one of these programming yards. Under the leadership of the previous Warden of SAC and the previous Captain and Program Lieutenant of C-Facility, there was a policy of ensuring that C-Facility remained a programming yard and keeping not only members and associates of prison gangs from being housed on the yard, but also any inmate who was not deemed a programming inmate.

21. Under the leadership of Defendants Baughman, Clough, and Haynie, the policy of keeping C-Facility a programming yard has been abandoned, placing the safety of all the programming inmates at risk. Not only has the policy been abandoned, but Defendants Clough and Haynie made repeated attempts to bring more gang members to C-Facility from B-Facility.

22. The policy of the new administration led to prison gang members,

their associates, and non-programming inmates being housed on C-Facility. As a direct result of this, the violence level on C-Facility immediately increased and continues to increase exponentially.

23. Because of the presence of these inmates on the yard, multiple inmates have been severely injured, beaten and stabbed, with at least one, if not more, dying from his injuries.

24. Defendants Baughman, Clough, and Haynie were well aware of the fact that the presence of these non-programming inmates was creating a dangerous environment and jeopardizing the safety of the programming inmates, but they did nothing to remedy the situation. Instead of removing the gang leaders who were orchestrating the attacks, they left them on the yard and allowed the attacks to continue. Not only did they not remove the gang members from the yard, they continued to advocate for more of them to be housed on C-Facility.

25. These Defendants also informed the gang members already on the yard that the presence of certain programming inmates on the yard was keeping them from housing more gang members on the yard, placing the safety of those programming inmates, including Plaintiff, in serious jeopardy.

26. The Work Center on C-Facility at SAC contains, among other things, several classrooms, including the OSRT Vocational class where Plaintiff worked as the Lead Tutor. The Work Center is where the events giving rise to this Complaint occurred.

COMPLAINT  PAGE 6 OF 21

27. The Work Center is a completely unsafe and virtually non-secure location, even though it is located on a level IV maximum security prison yard. Fights often break out and go unnoticed. Approximately three to six months before the events contained in this Complaint, Defendant Huber left her classroom unattended and allowed an inmate to be stabbed and the assailant to go undetected. This stabbing was never solved.

28. Despite the magnitude of this incident, and the fact that it went unsolved, Defendants Baughman, Jones, Clough, Haynie, John Doe 1, and John Doe 2, who are all responsible for the security of the Work Center education and vocation classes, did absolutely nothing to increase or improve security. They did nothing to ensure the safety of the inmates in the Work Center. No additional officers were assigned to the Work Center. No cameras were installed in the classrooms. No actions were taken whatsoever. No new policies were instituted. Things were merely allowed to continue as they had been.

29. Defendants John Doe 1 and John Doe 2, the Work Center Sergeant and the Work Center Education Officer, respectively, are supposed to provide security for the Work Center. However, they are never in the classrooms, or even in the hallway outside the classrooms. The only security they provide is responding if a teacher activates an alarm.

30. This failure on the part of the officers assigned to provide security for the Workcenter and its classrooms left the security of the classrooms entirely in the hands of the single teacher in each classroom, requiring them to alert custody staff if there were any problems. If the teacher went to the restroom or stepped out into the hall, as they

COMPLAINT PAGE 7 OF 21

often did, the classroom was left completely unsecured. If the teacher remains in his or her office, as they often did, they are completely unaware of what's going on in the classroom.

31.   Defendant Macias told inmates who were approaching her to bring contraband into the institution that she couldn't do it while Plaintiff was working in the classroom, implying that he would report her to Custody staff if she did so.

32.   By the above actions, each of the Defendants failed to perform their duties and created an unsafe environment at SAC, on C-Facility, in the Work Center, and in the Work Center classrooms. This was done with deliberate indifference to the safety of the inmates affected, and in the case of the specified Defendants, with malice and ill will against the Plaintiff.

33.  The actions of the Defendants directly resulted in the attack on Plaintiff, which is described below.

## ii.   The Attack on Plaintiff

34.  On February 21, 2017, Plaintiff reported to his work assignment as the Lead Tutor in the Work Center OSRT vocational class at approximately 0800.

35.   As Plaintiff made his way to the OSRT classroom, he noticed both Defendants Macias and Huber out in the hallway, leaving their classrooms unattended and unsecure.

36. As Plaintiff entered the CVRT classroom, he noticed that Defendants Macias and Huber had allowed Defendant Huber's tutor exit her classroom and enter the CVRT classroom, where he was not authorized to be, and then left him in the classroom unsupervised.

37. This inmate, and at least three of his fellow gang members, then attacked Plaintiff. Plaintiff was beaten and stabbed for at least five minutes. These inmates pinned Plaintiff down and tried to force the knife into Plaintiff's brain in order to kill him.

38. Despite the sounds of fighting and yells for help that came out of the classroom for more than five minutes, Defendants Macias and Huber did not respond to the incident or activate their alarms to alert custody staff of the incident. Nor did Defendants Doe 1 and Doe 2, whose duty is to provide security for the work center classrooms, respond to the incident.

39. After approximately five minutes, another inmate entered the classroom, and, upon seeing Plaintiff on the ground being attacked, intervened to stop the attack. Although he was immediately attacked for his efforts, he managed to get the assailants off of Plaintiff, help him to his feet, and assist him in fighting his way out of the classroom, as not only the original assailants, but also at least two more of their fellow gang members, attacked them and attempted to prevent them from exiting the classroom.

40. Defendants Huber and Macias did not respond even when several inmates were fighting in the doorway to the classroom less than ten

COMPLAINT   PAGE 9 OF 21

feet away from where they were standing. Even when Plaintiff and the inmate helping him to escape the attempt on his life made it out into the hallway and were right in front of them, covered in blood, Defendants Huber and Macias still did not activate their alarms, although Plaintiff's companion was yelling at them to "press the button."

41.  As it was, Plaintiff and his companion had to exit the classroom, go down a hallway, go up a set of stairs, go down another hallway, and return to the entrance of the Work Center to locate Correctional Officers to assist Plaintiff and get him medical attention.

42.  As the OSRT classroom had been unsupervised for at least ten minutes, it is reasonable to conclude that, if the other inmate had not intervened, Plaintiff would have been killed before Defendant Macias returned to the classroom.

43.  The inmate that later admitted to being the one who had stabbed Plaintiff — the inmate that Defendants Huber and Macias allowed to leave his classroom and enter the OSRT classroom — told prison officials that the reason Plaintiff was attacked was because Plaintiff "interfering" with his gang's ability to have drugs brought into the prison.

44.  The impression that Plaintiff received from these facts was that because prison gang members were housed on C-Facility and had their associates attempting to corrupt staff members, including Defendant Macias, and since Defendant Macias indicated to these gang members that Plaintiff was standing in the way of her doing

1  things for them, they attempted to murder Plaintiff in order to

2  clear the way for Defendant Macias to introduce contraband for

3  them.

4

5      45. By the above actions, Defendants Macias, Huber, Doe 1 and Doe 2

6  failed to perform their duties. They failed to provide security and supervision,

7  allowed an inmate armed with a knife to enter a classroom he was not

8  supposed to be in to attack Plaintiff. Defendants Huber and Macias may

9  have actively assisted him in this. The continued lack of supervision

10  allowed Plaintiff to be attacked for at least five minutes without a response,

11  necessitating the intervention of another inmate to save Plaintiff's life.

12  These Defendants thereby showed deliberate indifference to Plaintiff's

13  safety, and, in the case of Defendants Macias and Huber, with malice

14  and ill will towards the Plaintiff.

15

16          iii. The Aftermath

17

18      46. After the attack, Plaintiff was transported to UC Davis for

19  medical attention. Plaintiff had suffered 20 to 30 stab wounds (the exact

20  number was never determined), mostly to the neck and head. Plaintiff

21  also suffered a broken orbital socket (which required surgery and the

22  attachment of a plate to repair). Plaintiff also suffered two fractured

23  vertebrae in his neck, a punctured lung, and various other cuts, bruises,

24  and minor injuries.

25

26      47. Upon returning from the hospital, instead of being housed in the

27  infirmary, Plaintiff was housed directly in Administrative Segregation

28  and received nearly no medical treatment.

48. Plaintiff was also diagnosed with Post Traumatic Stress Disorder (PTSD) as a result of the incident. However, after that diagnosis, Plaintiff received no more mental health treatment.

49. This lack of medical treatment and mental health treatment has caused Plaintiff unnecessary pain and suffering and mental anguish.

50. Being housed in Administrative Segregation, Plaintiff has lost the ability to participate in Rehabilitative programming which he needs to complete in order to be eligible for parole, and to petition the Board of Parole Hearings to advance his next parole hearing. This will cause Plaintiff to remain in prison years longer than he might have otherwise.

51. Also as a result of being housed in Administrative Segregation, Plaintiff is unable to hold a work assignment. This has taken away his only source of income and his ability to pay his restitution fines and court fees. It also keeps his classification score from decreasing, which keeps him from being housed in a lower security level prison.

52. Finally, because of the new policy of CDCR to place gang members on what were once programming yards, there is now no place for Plaintiff to be transferred. Therefore, Plaintiff will continue to be punished by CDCR for being victimized by gang members that Defendants placed on a programming yard.

53. In combination, the actions of the Defendants, and the policies created by them, created a dangerous environment and led to the attack on Plaintiff, and constituted Cruel and unusual punishment.

## VI. EXHAUSTION OF ADMINISTRATIVE REMEDIES

54. Plaintiff submitted an inmate appeal regarding this issue on 3-2-2017. The First Level was bypassed. The Second Level Review resulted in a denial by Defendant Baughman. The Third Level Review also resulted in a denial by the representatives of Defendants Kernan and Allison. The Third Level of Review, or Director's Level Review, is the highest level of review available to an inmate in the custody of CDCR. As of 7-12-2017, Plaintiff has exhausted his administrative remedies.

## VII. LEGAL CLAIMS

55. For Plaintiff's Claims, each enumerated below, Plaintiff realleges paragraphs 1 through 54 above, as though fully set forth here in each statement of claim, and further alleges:

56. The policies of CDCR, SAC, and C-Facility at SAC, as created by, and enforced by, the Defendants, in and of themselves, created a dangerous environment, which led to the attack on Plaintiff and the subsequent injuries he has suffered.

57. By creating policies which allowed prison gang members and their associates to be released from the SHU and be spread out throughout the various prisons and security levels of CDCR, rather than isolating them to certain prisons or yards, Defendants Kernan and Allison created a dangerous environment, which led to the attack on Plaintiff and the subsequent injuries he has suffered.

1    58. By not removing prison gang members and their associates from
2    the various prisons and yards and isolating them to a single prison or
3    yard, even after it became apparent that their presence was
4    increasing the level of violence and creating a dangerous environment
5    for those inmates that did not associate with a prison gang and were
6    attempting to rehabilitate themselves, Defendants Kernan and Allison
7    demonstrated deliberate indifference to the safety of the inmates in the
8    custody of CDCR. The actions of these Defendants have caused Plaintiff
9    personal injury, pain and suffering, emotional distress, mental anguish, and
10   financial loss. They have failed to protect Plaintiff, as a prisoner in their
11   custody, and violated his Eighth Amendment right to be free of cruel
12   and unusual punishment.
13
14   59. By creating policies which allowed prison gang members and their
15   associates to be housed on C-Facility at SAC, a known programming yard,
16   rather than isolating them to B-Facility, Defendants Baughman, Clough,
17   and Haynie created a dangerous environment, which led to the attack
18   on Plaintiff, and the subsequent injuries he has suffered.
19
20   60. By not removing prison gang members from C-Facility and
21   isolating them and their associates to B-Facility, even after it became
22   apparent that their presence was increasing the level of violence and
23   creating a dangerous environment for the programming inmates housed
24   on C-Facility, Defendants Baughman, Clough, and Haynie demonstrated
25   deliberate indifference to the safety of the inmates in their custody. The
26   actions of these Defendants have caused Plaintiff personal injury, pain
27   and suffering, emotional distress, mental anguish, and financial loss. They
28   have failed to protect Plaintiff, a prisoner in their custody, and violated

1   his Eighth Amendment right to be free of cruel and unusual punishment.

3   61. By creating policies which did not provide proper security for
4   the C-Facility Work Center, Defendants Baughman, Jones, Clough,
5   Haynie and Doe 1 created a dangerous environment, which contributed
6   to the attack on Plaintiff and the subsequent injuries he has suffered.

8   62. By not increasing security in the Work Center classrooms,
9   even after an unsolved stabbing mere months before in one of the
10  classrooms, Defendants Baughman, Jones, Clough, Haynie and Doe 1
11  demonstrated deliberate indifference to the safety of the inmates
12  in their custody that worked in those classrooms. The actions of
13  these Defendants have caused Plaintiff personal injury, pain and suffering,
14  emotional distress, mental anguish, and financial loss. They have failed
15  to protect Plaintiff, a prisoner in their custody, and violated his Eighth
16  Amendment right to be free of cruel and unusual punishment.

18  62. By not properly performing their duty of providing security for
19  the Work Center classrooms, even after a recent unsolved stabbing in one
20  of those classrooms, Defendants Doe 1 and Doe 2 created a dangerous
21  environment, which contributed to the attack on Plaintiff and the
22  subsequent injuries he has suffered. They also demonstrated deliberate
23  indifference to the safety of the inmates in their custody that worked
24  in those classrooms. The actions of these Defendants have caused
25  Plaintiff personal injury, pain and suffering, emotional distress, mental
26  anguish, and financial loss. They have failed to protect Plaintiff, a
27  prisoner in their custody, and violated his Eighth Amendment right to
28  be free of cruel and unusual punishment.

COMPLAINT · PAGE 15 OF 21

63. By allowing an armed inmate to exit her classroom and enter the OSR7 classroom to attack Plaintiff, Defendant Huber actively assisted the attack on Plaintiff and contributed to the subsequent injuries he has suffered. She demonstrated deliberate indifference, if not outright malice, to Plaintiff's safety. Furthermore, she failed to respond to the attack or activate her alarm to alert custody staff to the attack on Plaintiff. The actions of Defendant Huber have caused Plaintiff personal injury, pain and suffering, emotional distress, mental anguish, and Financial loss. She is complicit in the injuries caused to Plaintiff and has violated his Eighth Amendment right to be free of cruel and unusual punishment.

64. By telling other inmates that Plaintiff was preventing her from bringing contraband into SAC for prison gang members and their associates, allowing an armed inmate to enter her classroom, then left the classroom unsupervised while the Plaintiff was attacked, and failed to respond to the attack or activate her alarm to alert custody staff to the attack on Plaintiff, Defendant Macias directly caused and assisted the attack on Plaintiff and contributed to the subsequent injuries he has suffered. She demonstrated deliberate indifference, if not outright malice, to Plaintiff's safety. The actions of Defendant Macias have caused Plaintiff personal injury, pain and suffering, emotional distress, mental anguish, and Financial loss. She is complicit in the injuries caused to Plaintiff and has violated his Eighth Amendment right to be free of cruel and unusual punishment.

65. Plaintiff was diagnosed with PTSD stemming from this attack and is suffering emotional distress and mental anguish. However,

1   he has been denied adequate mental health treatment, causing him
2   pain and suffering and violating his Eighth Amendment right to be
3   free of cruel and unusual punishment.
4
5      66. Despite the substantial injuries sustained by Plaintiff in
6   this attack, and despite doctors' orders for follow up treatment,
7   Plaintiff has been denied adequate medical treatment, causing
8   him pain and suffering and violating his Eighth Amendment
9   right to be free of cruel and ~~unusual~~ unusual punishment.
10
11     67. By housing Plaintiff in Administrative Segregation and
12   refusing to allow him to have a work assignment or granting him
13   workers' Compensation, Defendants took away Plaintiff's only
14   source of income and his ability to pay his restitution fines and
15   Court fees. Defendants, thereby, are punishing Plaintiff for being
16   victimized by inmates that they should never have placed on the
17   yard, and subjected Plaintiff to Cruel and unusual punishment in
18   violation of the Eighth Amendment.
19
20     68. By housing prison gang members on ~~every~~ many yards and especially
21   on yards that were considered programming yards, Defendants have
22   created a dangerous environment and have caused Plaintiff to be
23   retained in Administrative segregation with no yard to be housed on.
24   The Defendants have, thereby, caused Plaintiff to be punished for
25   wanting to rehabilitate himself and not associate with prison
26   gang members and their associates, and subjected Plaintiff to
27   cruel and unusual punishment in violation of the Eighth Amendment.
28

COMPLAINT PAGE 17 OF 21

1    69. Plaintiff has no plain, adequate, or complete remedy at law

2    to redress the wrongs described herein. Plaintiff has been and will continue

3    to be irreparably injured by the conduct of the Defendants unless the Court

4    grants the declaratory and injunctive relief which Plaintiff seeks.

5

6                VIII. PRAYER FOR RELIEF

7

8        WHEREFORE, Plaintiff humbly prays that this Court enter judgment:

9

10      70. Granting Plaintiff a declaration that the acts and omissions of

11   the Defendants described herein, violate his rights under the Constitution

12   and laws of the United States, particularly the Eighth Amendment, and

13

14      71. A declaration that Defendants have unconstitutionally, illegally,

15   and intentionally failed to protect Plaintiff from harm and showed

16   deliberate indifference to his safety, and

17

18      72. A declaration that Defendants' policies allowing prison gang

19   members and associates to be placed on programming yards have

20   created a dangerous environment, and

21

22      73. A declaration that Defendants' decision to allow prison

23   gang members and associates to remain on yards after their

24   presence has increased the level of violence demonstrates

25   deliberate indifference to the safety of the other inmates on the

26   yard, and

27

28      74. A declaration that Defendants refusal to isolate the

                COMPLAINT. PAGE 18 OF 21

1  prison gang members and their associates to certain prisons and yards

2  away from other inmates is a threat to the safety of those other

3  inmates and constitutes deliberate indifference, and

4

5  75.  A declaration that the lack of security in the Work Center

6  on C-Facility at SAC created a dangerous environment, and the

7  failure to increase security after the unsolved stabbing constitutes

8  deliberate indifference, and

9

10  76.  A declaration that Defendants have subjected plaintiff to

11  cruel and unusual punishment, and

12

13  77.  A declaration that Defendants have unconstitutionally and

14  illegally caused plaintiff real and actual injury, as well as unnecessary

15  pain and suffering, emotional distress, mental anguish, and financial

16  loss, and

17

18  78.  A preliminary and permanent injunction ordering Defendants

19  to cease violating plaintiff's rights, and

20

21  79.  A preliminary and permanent injunction ordering Defendants

22  to cease housing prison gang members and their associates on yards

23  with inmates who are not associated with prison gangs, and especially

24  on programming yards, and

25

26  80.  A preliminary and permanent injunction ordering Defendants

27  to remove the prison gang members and their associates from

28  C-Facility at SAC and replace them with programming inmates, and

COMPLAINT PAGE 19 OF 21

81. A preliminary and permanent injunction ordering defendants to increase security in the work center on C-Facility at SAC, and

82. A preliminary and permanent injunction ordering defendants to provide plaintiff with adequate medical and mental health treatment, and

83. A preliminary and permanent injunction ordering defendants to house Plaintiff on a programming yard where no prison gang members or associates are housed, and

84. A preliminary and permanent injunction ordering defendants to assign Plaintiff to a work assignment with an equal or greater pay rate to his previous work assignment, and

85. Granting Plaintiff compensatory damages in the amount of $500,000 against each Defendant, jointly and severally.

86. Plaintiff seeks punitive damages in the amount of $50,000 against each defendant, jointly and severally.

87. Plaintiff also seeks a jury trial on all issues triable by jury.

88. Plaintiff also seeks recovery of his costs in this suit, and

89. Any additional relief this Court deems just, proper, and equitable.

Dated: July 27, 2017

1  Humbly Submitted,

2                    Michael Anthony Todd #K-28000

3                    P.O. Box 290066

4                    Represa, CA 95671

5

6

7

8                    VERIFICATION

9

10    I have read the foregoing Complaint and hereby verify

11  that the matters alleged therein are true, except as to those

12  matters that are alleged on information and belief, and, as to

13  those, I believe them to be true. I certify, under penalty

14  of perjury, that the foregoing is true and correct.

15

16    Executed on this 27th day of July, 2017, at California

17  State Prison-Sacramento in Represa, California.

18

19    Signed, Rev. Michael A. Todd     Dated: July 27, 2017

20                    Michael Anthony Todd

21                    Plaintiff, Pro Se

22

23

24

25

26

27

28

COMPLAINT PAGE 21 OF 21

# PROOF OF SERVICE

(C.C.P. §§1013(a); 2015.5; 28 U.S.C. §1746)

I, _Michael Todd_, am over the age of eighteen (18) years, and I (am) (am not) a party to the within cause of action. My address is:

_Michael Todd #K28000_
_PO Box 290066_
_Represa, CA_
_95671_

On, _July 30, 2017_, I served the following documents:

_Complaint - 1983_

on the below named individual(s) by depositing true and correct copies thereof in the United State mail in Represa, California, with postage fully prepaid thereon, addressed as follows:

1. _Clerk of the Court_          2. _____
_US District Court_              _____
_501 I Street suite 4-401_       _____
_Sacramento, CA_                 _____
_95814_                          _____

I have read the above statements and declare under the penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this _30_ day of _July_, _2017_, at California State Prison - Sacramento, Represa, California.

(Signature) _Rev. Michael #K8 Todd_